UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW BEMPAH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 22-cv-748 |
| MIDLAND CREDIT MANAGEMENT, INC., | ) ) Judge Rebecca R. Pallmeyer |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Andrew Bempah sued Defendant Midland Credit Management, Inc. ("Midland"), alleging that Midland violated the Fair Debt Collection Practices Act by falsely reporting that Bempah's consumer debt was uncontested. Midland made an offer of judgment in the amount of $1,000.01 plus reasonable attorneys' fees, and Plaintiff accepted that offer. The remaining dispute is the reasonableness of the fees claimed by Plaintiff's counsel. As explained below, the court overrules Midland's objections in part and sustains them in part. Plaintiff is awarded fees in the amount $4,294 and costs in the amount of $467, a total of $4,761.

## BACKGROUND

On February 10, 2022, Bempah filed a two-count complaint against Midland, alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and the Illinois Collection Agency Act ("ICAA"). Specifically, Bempah alleged that Midland violated the FDCPA by communicating Bempah's credit information to a consumer reporting agency while omitting the fact that Bempah disputed the purported debt.

On March 28, 2022, Midland served Bempah with an offer of judgment under Rule 68 of the Federal Rules of Civil Procedure, which included a term allowing the court to enter judgment "[a]warding damages in the amount of $1,000.01 plus reasonable attorneys' fees, litigation expenses, and costs of suit incurred by Plaintiff Bempah." (Ex. A to Notice of Acceptance with Offer of Judgment [12-1] at 1.) On April 11, 2022, Bempah accepted this offer [12], and, the

following day, the court entered judgment in favor of Bempah and against Midland in the amount of $1,001, with the court to determine reasonable attorney's fees and costs [13].

On July 11, 2022, Bempah and Midland filed a joint report on attorney's fees pursuant to Local Rule 54.3, which this court construed as a partially-contested motion for an award of attorneys' fees and costs [15, 16]. Bempah requests $5,412 in fees and $467 in costs for a total of $5,879, and has filed a statement and exhibits in support of his petition [17, 18]. Midland objects to the claim in part, and contends that Bempah's counsel is entitled to no more than $1,581 in fees and $467 in costs. Midland contends that the fee award should be reduced for four reasons: (1) counsel's claimed hourly rates are unjustified; (2) the hours billed are unreasonable; (3) the fees are disproportionate to the amount recovered; (4) Bempah impermissibly seeks fees incurred after the offer of judgment was served. The court addresses these arguments in turn.

## DISCUSSION

Generally, courts determine a reasonable attorneys' fee by multiplying the lawyers' reasonable hourly billing rate by the number of hours reasonably expended on the litigation. *See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). To decide a reasonable fee, the court does not hold itself to "auditing perfection" but is entitled to do "rough justice" using estimates in calculating and allocating an attorney's time. *See Fox v. Vice*, 563 U.S. 826, 838 (2011).

**I.     Reasonable Hourly Rate**

The fee applicant bears the burden "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 (1984). Here, Plaintiff's attorneys, Bryan Thompson and Robert Harrer, seek hourly rates of $440. For support, they provide declarations, an invoice (supplemented with a payment receipt) indicating payment of $440 per hour in a current

plaintiff-funded suit, and the Laffey Matrix.[1] In addition to these sources, the court considers what courts in this district have awarded these lawyers for fee-shifting work in the past.

According to his declaration, Bryan Thompson has practiced law since 2012, serving as counsel in more than 200 FDCPA cases. He contends that his substantial experience in FDCPA and consumer-defense cases—among other areas—supports his claimed hourly rate of $440. Robert Harrer has practiced law since 2014, focusing exclusively on consumer protection litigation. He contends his experience also supports an hourly rate of $440. These declarations provide useful information, but an attorney's "self-serving affidavit" does not, by itself, satisfy Plaintiff's burden of establishing an attorney's reasonable hourly fee. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 556 (7th Cir. 1999).

The court also considers whether a party has ever actually paid fees at the attorney's self-reported rate, which the Seventh Circuit considers the best evidence for whether a fee is reasonable. *See Cintas Corp. v. Perry*, 517 F.3d 459, 469–70 (7th Cir. 2008). Thompson has submitted an invoice for work on *In re TikTok Inc., Consumer Privacy Litigation*, 565 F. Supp. 3d 1076 (N.D. Ill. 2021) to support his claimed hourly rate. That case, however, was a multidistrict litigation regarding violations of federal privacy law; it is both more complex and required more coordination than the FDCPA matter here. Thompson served as local counsel on a brief signed by attorneys from four firms arguing on behalf of 2,254 opt-out movants. *See* Mot. to Accept Request for Exclusion [270], *In re TikTok Inc., Consumer Privacy Litigation*, 565 F. Supp. 3d 1076 (N.D. Ill. 2021) (No. 20-4699). Although an "attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate," the court is not persuaded that the work Thompson performed in the *TikTok* litigation is comparable to the work involved here. *See People*

---

[1] The Laffey Matrix is a table of hourly rates prepared by the United States Attorney's Office in the District of Columbia for attorneys in the Washington, D.C. area that some circuits use as an aid for determining a reasonable fee under fee-shifting statutes. *See Montanez v. Simon*, 755 F.3d 547, 554 (7th Cir. 2014).

*Who Care v. Rockford Board of Education, School District No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996) ("actual billing rate for comparable work is 'presumptively appropriate'").

Rates recovered for prior FDCPA work are more instructive. Four years ago, Judge St. Eve, then of this court, approved a $340 hourly rate for Thompson and Harrer—*see Susan Wigsmoen v. Madarich Law Group, LLP*, No. 17-cv-7154 (N.D. Ill. April 23, 2018)—but that rate was uncontested. *See Paz v. Portfolio Recovery Assoc., LLC*, No. 15-cv-5073, 2018 WL 4520221, at *2 (N.D. Ill. May 17, 2018) (discounting the significance of an award by another court where "the rate requested was not contested and the court did not address the reasonableness of the rate sought.") In cases decided since 2017 where Thompson's hourly rate was contested, he has been awarded fees at an hourly rate of just $300. *Id.* at *3 (citing *Evans v. Portfolio Recovery Assocs., LLC*, No. 15 CV 4498, 2016 WL 6833930 (N.D. Ill. July 12, 2017), and *Gomez v. Portfolio Recovery Assocs., LLC*, No. 15 CV 4499, 2016 WL 3387158 (N.D. Ill. July 26, 2017)). Based on these data points, Midland urges that both Thompson and Harrer's hourly rates should be no more than $310. The court notes, however, that Midland's position appears to ignore inflation; according to the U.S. Bureau of Labor Statistics' Consumer Price Index Inflation Calculator, $300 in July 2017 has the same buying power as $364.86 in November 2022 (the most current data available). *See* https://www.bls.gov/data/inflation_calculator.htm.

As supplemental support for counsels' claimed hourly rate of $440, Plaintiff cites the Laffey Matrix. The Seventh Circuit has not adopted the Laffey Matrix and has expressed some skepticism about its usefulness outside of Washington, D.C.; the Seventh Circuit instead leaves it "to trial judges to exercise their discretion in evaluating its usefulness in any particular case." *Montanez*, 755 F.3d at 554. The most recent iteration of the Laffey Matrix sets the hourly rate for attorneys with eight to ten years of experience at $452 per hour. Because that rate is significantly higher than the rate Plaintiff's counsel has been awarded for prior FDCPA work in this district, the court declines to adhere to the Laffey Matrix as controlling on this issue.

4

That said, however, the court recognizes that in the years since *Paz*, *Gomez*, and *Evans*, Plaintiff's attorneys have gained experience, while litigation costs have increased. Taking into consideration Plaintiff counsel's professional experience, the relatively uncomplex nature of this dispute, counsel's prior fee awards, and the rate of inflation, the court finds $380 a reasonable hourly rate for their services in this case.

## II.     Reasonable Amount of Time Expended

Midland argues that counsel's billed hours should be reduced because the attorneys impermissibly seek recovery for duplicative and administrative tasks. First, Midland argues that counsel's hours billed for drafting the complaint should be cut in half because the work was duplicative: Midland points out that Bempah's attorneys "filed a number of nearly identical violation FDCPA cases against the same defendant on behalf of several plaintiffs." (Def.'s Resp. [21] at 8 (citing *Paz*, 2018 WL 4520221, at *3 (reducing "excessive, redundant, or otherwise unnecessary" hours)).) To Midland, it is "farfetched" that Plaintiff counsel spent 2.7 hours—as billed—to drafting, finalizing, and filing the complaint, in view of the substantial overlap between this case and five other related cases. (*See id.*) Midland also notes that Bempah's counsel handle FDCPA violations so often that they use form complaints, as is common in this type of litigation, so their work should have been more expedient. *See Lemieux v. Guy*, No. 106-CV-0941-DFH-WTL, 2006 WL 3626555, at *4 (S.D. Ind. Nov. 20, 2006) ("The expectations for efficiency are especially high in the kind of high-volume litigation represented here, in which forms for complaints . . . are the norm.").

In an effort to resolve this matter prior to submitting a fee petition, Plaintiff's counsel voluntarily reduced billing for the complaint by 1.8 hours. Beyond that reduction, the court agrees with Plaintiff that the time devoted to preparing the complaint is reasonable. As Plaintiff's counsel pointed out, even when they use previous work product to reduce the time spent, additional effort is required, "including discussing the facts with the client, compiling, reviewing, and redacting exhibits, ensuring case law is current and the facts are properly pled, and drafting the other

5

additional documentation such as civil file cover sheet and filing." (Pl.'s Reply [22] at 5.) It is reasonable for counsel to undertake such tasks to fulfil their duty to submit accurate filings.

Midland contends, in addition, that the court should not award fees for counsel's work on various administrative tasks. (*See* Def.'s Resp. [21] at 7 (citing *Kaylor-Trent v. John C. Bonewicz, P.C.*, 916 F. Supp. 2d 878, 886 (C.D. Ill. 2013).) Midland identifies several time entries that account for administrative tasks in Bempah's LR 54.3 Statement, such as "drafting cover sheets and notices of appearances, 'noting' or otherwise receiving documents, filing documents to the court, sending documents to the client, calendaring dates, and even reviewing time entries and communicating with the client regarding payment options." (*Id.*) Plaintiff replies that courts in this district have found that time spent reviewing and electronically filing documents is not merely technical and administrative in nature. (*See* Pl.'s Reply [22] at 6–7 (citing *Young v. Accounts Recovery Bureau, Inc.*, 2012 WL 3764014, *4 (N.D. Ind. Aug. 8, 2012).) Plaintiff's counsel also contends that, in a smaller firm like theirs, it is not unreasonable for attorneys to do administrative work themselves and bill for it. (*Id.* at 7 (citing *Fricano v. LVNV Funding, LLC*, No. 14 C 08225, 2015 WL 5331711, at *6 (N.D. Ill. Sept. 8, 2015).)

The court agrees with Plaintiff that attorneys may be compensated for administrative work, even if some portions of the work could instead be performed by support staff. The court nevertheless concludes that some of the amount of time Plaintiff's counsel has billed for those administrative tasks is excessive. For example, it is unreasonable to spend 12 minutes (at an attorney's full hourly rate) to "note judge assignment" and "note clerk's notice," tasks that should consume no longer than a minute or two. (Ex. A to Pl.'s Statement in Supp. of Pet. for Fees [17-1] at 2.) It is also unreasonable for an attorney to bill 12 minutes to "review minute order from court setting status date, calendar same," which also can be completed within a few short moments. (*Id.*) The court reduces Plaintiff's counsel's billed time by one additional hour, resulting in 11.3 total hours billed.

### III.    Proportionality of Fees to Amount Recovered

Midland urges that Plaintiff's attorneys' fees should be reduced because counsel seeks an amount nearly six times greater than that of the judgment. (Def.'s Resp. [21] at 9.) The court disagrees. Although the Seventh Circuit has instructed that "proportionality concerns are a factor in determining what a reasonable attorney's fee is," *Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000), Midland's position overlooks the specific nature of FDCPA cases, which involve "important public interests which may not be reflected in the size of a particular recovery." *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 675, 687 (7th Cir. 2022) (quoting *Connolly v. National School Bus Service, Inc.*, 177 F.3d 593, 597 (7th Cir. 1999)). The Seventh Circuit has explained that "Congress's goal of using attorney fee awards as an incentive for plaintiffs to bring actions enforcing the rights of the public, like those under the FDCPA, is greatly undermined if courts apply a strict proportionality analysis that fails to account for the remedial policies that such fee awards to private attorneys general are designed to promote." *Cooper*, 42 F.4th at 687. Recognizing Congress's design of the FDCPA fee-shifting scheme, the court declines to reduce Plaintiff's attorneys' fee award on proportionality grounds. *See* 15 U.S.C. § 1692k(a)(3).

### IV.    Fees Incurred After Offer of Judgment

Courts generally use contract principles to interpret Rule 68 offers and must enforce Rule 68 judgments according to their plain language. *Webb v. James*, 147 F.3d 617, 620 (7th Cir. 1998). Midland's Rule 68 offer included a term allowing the court to award "reasonable attorneys' fees, litigation expenses and costs of suit incurred by Plaintiff Bempah." (Ex. A to Notice of Acceptance with Offer of Judgment [12-1] at 1.) Midland argues that "incurred" (appearing in the past tense) precludes Bempah from recovering fees "accrued at the time of the offer and not for anything that accrues thereafter." (Def.'s Resp. [21] at 10.) Midland argues that this is a plain-language interpretation of the offer, which comports with how the Seventh Circuit has determined Rule 68 offers should function. (*Id.*) In so arguing, however, Midland overreads *Paz v. Portfolio Recovery Assocs., LLC*, 924 F.3d 949, 953–54 (7th Cir. 2019). In that case, the

7

court affirmed reduction of a fee award where the rejected Rule 68 settlement offer was three times the amount of the plaintiff's recovery at trial. *Id.* at 953. The Seventh Circuit has never held that Rule 68 limits a plaintiff's ability to recover costs after *accepting* the offer. To the contrary, the Seventh Circuit has noted that "because the consequences of a Rule 68 offer are so great, the offering defendant bears the burden of any silence or ambiguity concerning attorney fees." *Sanchez v. Prudential Pizza, Inc.*, 709 F.3d 689, 692 (7th Cir. 2013).

That principle is important here, as it is ambiguous whether the word "incurred" means "incurred up to the point this offer is accepted" (Defendant's position) or "incurred throughout this litigation as a whole" (Plaintiff's position). Midland cites no case where a court has construed the specific language at issue here as precluding recovery of attorney's fees incurred after the date of the offer. For example, in *Morjal v. City of Chicago*, 774 F.3d 419, 422 (7th Cir. 2014), the offer was more specific, allowing for "reasonable attorney's fees and costs *accrued to date* in an amount to be determined by the Court" (emphasis added). *See also Paz v. Portfolio Recovery Assocs., LLC*, 924 F.3d 949, 953 (7th Cir. 2019) (Rule 68 offer for fees "through the date of Plaintiff's acceptance of this offer"). Because the language Midland used is ambiguous, the court reads it in Plaintiff's favor. *Cooper*, 42 F.4th at 683 ("The offering party also bears the risk of any silence or ambiguity, especially related to attorney fees.").

Nothing about the requested award is unconscionable. Its size, which is greater than Midland would like is attributable in part to the ambiguity in Midland's own Rule 68 offer. After giving notice of acceptance of the judgment offer, Plaintiff's counsel billed six hours for this matter. Fee litigation is unfortunately time-consuming, and six hours does not appear excessive.

**V.    Summary of Award**

A reasonable hourly rate for Thompson and Harrer's work on this case is $380 per hour, and a reasonable amount of time spent litigating this case is 11.3 hours. Accordingly, Bempah's counsel is entitled to attorneys' fees of $4,292 and costs of $467, for a total of $4,761.

**CONCLUSION**

For the reasons set forth above, the court grants in part and denies in part the parties' joint motion for attorney fees [18]. The court awards Bempah attorneys' fees and costs in the amount of $4,761.00 against Defendant Midland.

ENTER:

Dated: January 5, 2023

_____
REBECCA R. PALLMEYER
United States District Judge